No. 23-60165

_____

# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

## PHILIP GERARD TURNER,

*Plaintiff - Appellant*

## VERSUS

## AKILLIE MALONE OLIVER, in Her Individual Capacity,

*Defendant - Appellee*

---

## BRIEF OF APPELLANT

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

Honorable Judge Henry T. Wingate, United States District Judge

JIM WAIDE, MS Bar No. 6857
waide@waidelaw.com
WAIDE & ASSOCIATES, P.A.
332 North Spring Street
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

ATTORNEYS FOR PLAINTIFF-APPELLANT

No. 23-60165

_____

**IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT**

_____

**PHILIP GERARD TURNER,**

*Plaintiff - Appellant*

**VERSUS**

**AKILLIE MALONE OLIVER, in Her Individual Capacity,**

*Defendant - Appellee*

_____

**CERTIFICATE OF INTERESTED PARTIES**

_____

The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of FIFTH CIRCUIT RULE 28.2.1 have an interest in the outcome of this case. These representations are made in order that the Judges of this Court may evaluate possible disqualification or recusal.

1.      Philip Gerard Turner, Plaintiff-Appellant;

2.      Jim Waide, counsel for Plaintiff-Appellant;

3.      Waide & Associates, P.A., counsel for Plaintiff-Appellant;

4.      Akillie Malone Oliver, Defendant-Appellee;

5.     Alan M. Purdie, Esq., counsel for Defendant-Appellee; and

6.     Purdie & Metz, PLLC, counsel for Defendant-Appellee.

SO CERTIFIED, this the 12th day of June, 2023.

/s/ Jim Waide
JIM WAIDE
Counsel for Plaintiff-Appellant

## <u>STATEMENT REGARDING ORAL ARGUMENT</u>

Whether the qualified immunity doctrine applies to acts wholly outside the scope of a defendant's official duties is an important issue, which warrants oral argument.

# **TABLE OF CONTENTS**

CERTIFICATE OF INTERESTED PARTIES. . . . . . . . . . . . . . . . . . . . . . . . . ii

STATEMENT REGARDING ORAL ARGUMENT. . . . . . . . . . . . . . . . . . . . . iv

TABLE OF CONTENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . v

TABLE OF AUTHORITIES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . vii

STATEMENT OF JURISDICTION.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

STATEMENT OF THE ISSUES. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii

CONCISE STATEMENT OF THE CASE. . . . . . . . . . . . . . . . . . . . . . . . . . 1

STANDARD OF REVIEW. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

SUMMARY OF THE ARGUMENT. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

ARGUMENTS. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

      I.    APPELLEE HAS NO IMMUNITY FOR HER ACTS OUTSIDE
              THE SCOPE OF HER DUTIES AS DISTRICT ATTORNEY IN
              CAUSING TURNER'S TERMINATION FROM HIS
              EMPLOYMENT BECAUSE OF EXERCISE OF THE FIFTH
              AMENDMENT RIGHT NOT TO TESTIFY.

      II.   TURNER'S SECOND AMENDED COMPLAINT MAKES A
              PLAUSIBLE CLAIM THAT APPELLEE MALICIOUSLY
              INTERFERED WITH TURNER'S EMPLOYMENT
              CONTRACT, IN VIOLATION OF STATE LAW.

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

CERTIFICATE OF SERVICE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

CERTIFICATE OF COMPLIANCE. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# TABLE OF AUTHORITIES

**FEDERAL CASES:**

*Anderson v. Creighton*, 483 U.S. 635 (1987). . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4-6

*Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007). . . . . . . . . . . . . . . . . . . . . . . . 5

*Dearman v. Stone County School Dist.*, 2014 WL 1153068
    (S.D. Miss. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Doe v. Purdue Univ.*, 928 F.3d 652 (7th Cir. 2019). . . . . . . . . . . . . . . . . . . . . . . 4

*Doe v. State of La.*, 2 F.3d 1412 (5th Cir. 1993). . . . . . . . . . . . . . . . . . . . . . . 12-13

*Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272 (5th Cir. 1992). . . . . . . . . . . . 11

*Fairchild v. Coryell Cnty., Texas*, 40 F.4th 359 (5th Cir. 2022). . . . . . . . . . . . . . 12

*Gibson v. Estes*, 2008 WL 3884393 (N.D. Miss. 2008), affirmed,
    338 Fed.Appx. 476 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17

*Crabb v. Itawamba County, Miss.*, 2005 WL 2648017 (N.D. Miss. 2005). . . . 16, 18

*Dixon v. Alcorn Cnty., Mississippi*, 2022 WL 610268 (N.D. Miss. 2022). . . . . . . 16

*Grunewald v. United States*, 353 U.S. 391 (1957). . . . . . . . . . . . . . . . . . . . . . . . 7

*Hammer v. Burls*, 2020 WL 3317124 (2020). . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Harlow v. Fitzgerald*, 457 U.S. 800 (1982). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Hicks v. Martinrea Auto. Structures (USA), Inc.*, 12 F.4th 511 (5th Cir. 2021). . . 19

*Imbler v. Pachtman*, 424 U.S. 409 (1976). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In Re Corrugated Container Anti–Trust Litigation*, 620 F.2d 1086
(5th Cir. 1980). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Izen v. Catalina*, 256 F.3d 324 (5th Cir. 2001). . . . . . . . . . . . . . . . . . . . . . 13

*Kastigar v. United States*, 406 U.S. 441 (1972), cert. denied, 449 U.S. 1102
(1981). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

*Liston v. Home Ins. Co.*, 659 F.Supp. 276 (S.D. Miss. 1986). . . . . . . . . . . . . 14-15

*Lofton v. City of West Point, Miss.*, 2012 WL 1135862 (N.D. Miss. 2012). . . . . . . . . . 15, 17

*Papagolos v. Lafayette County School Dist.*, 972 F.Supp.2d 912
(N.D. Miss. 2013). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18

*Rogers v. Jarrett*, 63 F.4th 971 (5th Cir. 2023). . . . . . . . . . . . . . . . . . . . . . 10-11

*Russell v. City of Tupelo, Mississippi*, 2021 WL 4979005
(N.D. Miss. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18-19

*Stephen v. Winston County, Miss.*, 2008 WL 4813829 (N.D. Miss. 2008). . . . . 16-17

*Stratta v. Roe*, 961 F.3d 340 (5th Cir. 2020). . . . . . . . . . . . . . . . . . . . . . . . . 4

*Turner v. Oliver*, 2023 WL 2784882 (S.D. Miss. 2023). . . . . . . . . . . . . . . . . . . xi, 1

*United States v. Henderson*, 565 F.2d 900 (5th Cir. 1978). . . . . . . . . . . . . . . . . . 8

*Vaughan v. Carlock Nissan of Tupelo, Inc.,* 553 Fed.Appx. 438
(5th Cir. 2014). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18

*Weaver v. Brenner*, 40 F.3d 527 (2d Cir. 1994). . . . . . . . . . . . . . . . . . . . . . . . 8

*Wehling v. Columbia Broadcasting System*, 608 F.2d 1084 (5th Cir. 1979). . . . . . 12

**STATE CASES:**

*AmSouth Bank v. Gupta*, 838 So. 2d 205 (Miss. 2002). . . . . . . . . . . . . . . . . . . . . 14

*Cenac v. Murry*, 609 So.2d 1257 (Miss. 1992). . . . . . . . . . . . . . . . . . . . . . . . . 14

*Courtney v. Glenn*, 782 So.2d 162 (Miss. App. 2000). . . . . . . . . . . . . . . . . . . . 14

*Grice v. FedEx Ground Package System, Inc.*, 925 So.2d 907
(Miss. App. 2006). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Jones v. Mississippi Institutions of Higher Learning*, 264 So. 3d 9
(Miss. App. 2018). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17-18

*Par Indus., Inc. v. Target Container Co.*, 708 So.2d 44 (Miss. 1998). . . . . . . . . . 16

*Springer v. Ausbern Constr. Co.*, 231 So. 3d 980 (Miss. 2017). . . . . . . . . . . . 16-18

*State of Mississippi v. Turner*, Ms. S.Ct. No. 2020-M-00589-SCT
(Miss. 2021). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

*Univ. of Miss. Med. Ctr. v. Oliver*, 235 So.3d 75 (Miss. 2017). . . . . . . . . . . . . . 17

*Watkins v. Oakes*, 318 So. 3d 1125 (Miss. App. 2020), reh'g denied (Jan. 19, 2021),
cert. denied, 318 So. 3d 483 (Miss. 2021). . . . . . . . . . . . . . . . . . . . . . . . 15

*Wertz v. Ingalls Shipbuilding, Inc.*, 790 So.2d 841 (Miss. App. 2000). . . . . . . . . 15

*White v. State*, 851 So. 2d 400 (Miss. App. 2003). . . . . . . . . . . . . . . . . . . . . . 9

**STATUTES AND RULES:**

28 U.S.C. § 1291. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

28 U.S.C. § 1331. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

28 U.S.C. § 1367(a). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xi

42 U.S.C. § 1983. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7, 11

Fed. R. Civ. P. 12(b)(6). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . xii, 1, 4-5, 20

Miss. Code Ann. § 11-46-5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Miss. Code Ann. § 25-31-11. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

Miss. Code Ann. § 97-1-5. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8-9

Miss. Code Ann. § 99-3-28. . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12-13

**MISCELLANEOUS:**

Restatement 2d of Torts § 767 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . 14

## <u>STATEMENT OF JURISDICTION</u>

The district court had federal question jurisdiction under 28 U.S.C. § 1331, and had supplemental jurisdiction over Appellant's state law claim under 28 U.S.C. § 1367(a). This Court has jurisdiction over the appeal from the final judgment of the district court, pursuant to 28 U.S.C. § 1291. The district court's order granting Appellee's motion to dismiss was filed on March 10, 2023, and is found at *Turner v. Oliver*, 2023 WL 2784882 (S.D. Miss. 2023); ROA.345-367. The Notice of Appeal was timely filed on March 30, 2023. ROA.368-369.

## <u>STATEMENT OF THE ISSUES</u>

1.      Whether refusing to answer questions in a probable cause hearing in state court is protected by the Fifth Amendment of the United States Constitution.

2.      Whether any immunity applies where a district attorney is not acting pursuant to the discretionary duties of his or her office, but is acting outside of the scope of his or her official duties in communicating with members of the board of trustees of a school district.

3.      Whether invoking the Fifth Amendment in a court proceeding is a clearly-established right.

4.      Whether Appellant made plausible claims that Appellee maliciously interfered with his employment as a school principal in violation of state tort law.

5.      Whether the district court was required to accept as true the allegations of Appellee's Second Amended Complaint in ruling upon a 12(b)(6) motion to dismiss.

**CONCISE STATEMENT OF THE CASE**

On April 23, 2021, Plaintiff/Appellant Philip Gerard Turner ("Turner") filed suit against multiple defendants arising out of retaliation against him by the Defendant/Appellee Akillie Malone Oliver ("Appellee" or "Oliver"), who was the district attorney of Yazoo County, Mississippi.  ROA.7-28.

With new additional counsel, and with leave of court, ROA.269-271, Turner filed a Second Amended Complaint.  ROA.272-277.  Appellee then filed a Rule 12(b)(6) motion and brief in support of that motion asking the district court to dismiss the Second Amended Complaint.  ROA.279-313.

After Turner responded, ROA.318-334, the district court sustained the Rule 12(b)(6) motion to dismiss on  March 10, 2023.  *Turner v. Oliver*, 2023 WL 2784882 (S.D. Miss. 2023); ROA.345-367.   Turner timely appealed on March 30, 2023. ROA.368-369.

According to the Second Amended Complaint, the relevant facts are as follows:

At all relevant times, Turner was acting as the principal of Yazoo County High School, and Oliver was the elected district attorney.  ROA.272-273.  Oliver's son was a student at the high school where Turner served as principal.  ROA.272-273.  Turner had both disciplined and suspended Oliver's son.  Oliver objected to this discipline,

1

went to the school, and berated Turner to such an extent that at one point Oliver had to be escorted off school property.  ROA.273.

At a later time, in August 2019, a different child accused School Resource Officer Samuel Carter of having choked him.  Turner was not present for the incident, did not witness it, and did not have any personal knowledge as to whether the incident occurred.  ROA.273.

District Attorney Oliver, in an investigative capacity, came to the school, accompanied by the district attorney's office's criminal investigator.  Oliver interviewed witnesses and took pictures.  ROA.273.

Thereafter, a probable cause hearing was held concerning whether there was probable cause to bring charges against the School Resource Officer.  During this hearing, because of animosity toward Turner, Oliver referred to Turner as a "possible defendant."  ROA.274.  Because Oliver referred to Turner as a "possible defendant," Turner invoked his Fifth Amendment right to refuse to testify at the probable cause hearing.  ROA.274.

Thereafter, Oliver informed a grand jury that Turner was an "accessory after the fact."  ROA.274.  Turner was not an accessory after the fact.  All Turner did was invoke the Fifth Amendment.  Turner invoked the Fifth Amendment only because Oliver had threatened that he was a "possible defendant."  ROA.274.

2

The grand jury returned a factually baseless indictment, which reads:

PHILIP TURNER, did, between the 30TH day of August and September 5, 2019, in Yahoo County, Mississippi, did conceal, receive, or relieve a felon, or having aided or assisted any felon, knowing that the person had committed a felony, child abuse, with intent to enable the felon, Samuel Carter, to escape or to avoid arrest, trial, conviction or punishment after commission of the felony in violation of Mississippi Code 97-1-5 (1972), as amended, against the peace and dignity of the State of Mississippi.

ROA.14; and *see* ROA.274.

The circuit court removed Oliver as prosecutor. On interlocutory appeal, the Mississippi Supreme Court upheld Oliver's removal. *See* Mississippi Supreme Court Order in *State of Mississippi v. Turner*, Ms. S.Ct. No. 2020-M-00589-SCT (Miss. 2021); ROA.18, 275.

The Mississippi Attorney General then assumed the prosecution, and obtained an Order of *nolle prosequi* because of a lack of evidence. ROA.20-21, 274.

District Attorney/Appellee Oliver was not content to obtain Turner's criminal indictment. For the purpose of getting Turner fired as principal, on March 3, 2020, Oliver told members of the board of trustees of Turner's school board, which employed Turner, that Turner had been "validly indicted." Oliver's claim to the school district, that Turner was validly indicted, caused the school board to terminate Turner from his employment. ROA.275.

3

Oliver's getting Turner terminated from his position as principal, was based upon Turner's invoking the Fifth Amendment at the probable cause hearing. ROA.275.

## STANDARD OF REVIEW

This case is before the Court on a Rule 12(b)(6) motion to dismiss. To survive such a motion, the complaint need only "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim is facially plausible if the pleaded factual content 'allows the court to draw the reasonable inference that the Appellee is liable for the misconduct alleged.'" *Stratta v. Roe*, 961 F.3d 340, 349-50 (5th Cir. 2020), quoting *Ashcroft v. Iqbal*, 556 U.S. at 678.

The Court must "recount the facts as [Turner] describes them, drawing every inference in his favor. . . [The Court's] task is not to determine what allegations are supported by the evidence but to determine whether [Turner] is entitled to relief if everything that he says is true." *Doe v. Purdue Univ.*, 928 F.3d 652, 656 (7th Cir. 2019) (citation omitted).

## SUMMARY OF THE ARGUMENT

Turner's Second Amended Complaint states a plausible claim for relief since it alleges facts from which a jury could infer that Oliver caused Turner to be discharged from his employment because of Oliver's animosity toward him arising

from his invoking the Fifth Amendment at an official court proceeding. There is no qualified immunity defense, because the district attorney's communicating with members of a board of trustees of a school district is not a part of her job duties, and there is no discretion to be exercised.

Alternatively, if qualified immunity applies, it is clearly-settled law that one has the right to invoke the Fifth Amendment in good faith at an official court proceeding.

Turner's state law claim of malicious interference with employment is based upon clearly-settled Mississippi law, holding that one who acts in bad faith to interfere with the contract of another, is liable for the Mississippi law tort of malicious interference with employment.

All that must be alleged to survive a 12(b)(6) motion to dismiss is that Turner stated enough facts to indicate a plausible claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007).

The Second Amended Complaint plausibly alleges that there was ill will arising from Turner's taking disciplinary action against Oliver's son and arising from Turner's invoking the Fifth Amendment when Oliver was investigating another school official. Such allegations contrast markedly with the facts in *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), where a plaintiff based his claims of discriminatory arrest on a

disproportionate number of persons of Arab descent being arrested. The arrest followed the September 11 terrorist attacks, so the Supreme Court held that arresting a disproportionate number of Arabs did not "give rise to a plausible inference that respondent's arrest was the result of unconstitutional discrimination. . . ." *Iqbal*, 556 U.S. at 682.

While the claim in *Iqbal* was not plausible, it is plausible that a district attorney would retaliate against one who disciplined her son or who invoked the Fifth Amendment when she was trying to get information to support issuance of an arrest warrant.

The indictment which Oliver had obtained was not valid, since it was based solely upon Turner's invoking the Fifth Amendment, a protected constitutional right, and since there was no probable cause to support the indictment. Invoking the Fifth Amendment in good faith is not being an accessory after the fact, nor does it constitute any crime whatsoever.

# ARGUMENTS

## I.   APPELLEE HAS NO IMMUNITY FOR HER ACTS OUTSIDE THE SCOPE OF HER DUTIES AS DISTRICT ATTORNEY IN CAUSING TURNER'S TERMINATION FROM HIS EMPLOYMENT BECAUSE OF EXERCISE OF THE FIFTH AMENDMENT RIGHT NOT TO TESTIFY.

Turner agrees that the law grants Oliver absolute immunity for obtaining an indictment before a grand jury.  *Imbler v. Pachtman*, 424 U.S. 409, 422-23 (1976), established that under 42 U.S.C. § 1983, prosecutors are absolutely immune for acts "within the scope of their duties."

Because Oliver was abusing the power of her office for malicious reasons, Oliver, ethically, should have recused herself, as the state circuit court and Mississippi Supreme Court required.   Nevertheless, in presenting the case to the grand jury, Oliver acted in a prosecutorial capacity.   Since Oliver was acting as a prosecutor, she is entitled to absolute immunity for obtaining Turner's indictment.

On the other hand, Oliver's causing Turner to be fired from his employment is outside the scope of Oliver's duties as a district attorney.

The Second Amended Complaint alleges:

Defendant Oliver carried out further animosity toward Plaintiff on March 3, 2020, when she informed trustees of the School District that Plaintiff had been validly indicted for the crime of accessory after the fact.   Defendant Oliver made this claim for the purpose of getting Plaintiff terminated from his position as principal.   Defendant Oliver

7

claimed to the School District that Plaintiff was guilty of the crime of accessory after the fact, resulting in the School District's terminating Plaintiff from his position as Principal.

ROA.275.

Oliver's claim to members of the school board, that Turner was guilty of being an accessory after fact, is false. The indictment was false, since it was based upon personal animosity and upon Turner's exercising his rights under the Fifth Amendment of the United States Constitution, and since it lacked evidentiary support.

Perhaps no right is more fundamental then the right under the Fifth Amendment to silence. "The Fifth Amendment by its own terms grants a person the right to be silent so as not to be a witness against himself in a criminal case, and to suffer no penalty for the exercise of that right." *Weaver v. Brenner*, 40 F.3d 527, 535 (2d Cir. 1994). "It is elementary that the privilege against self-incrimination is a right guaranteed by the Constitution." *United States v. Henderson*, 565 F.2d 900, 902 (5th Cir. 1978). "The value of constitutional privileges is largely destroyed if persons can be penalized for relying on them." *Grunewald v. United States*, 353 U.S. 391, 425 (1957) (Black, J., concurring).

Further, the indictment was not valid because there was no evidence to support it. According to MISS. CODE ANN. § 97-1-5(1):

Every person who shall be convicted of having concealed, received, or relieved any felon, or having aided or assisted any felon, knowing that the person had committed a felony, with intent to enable the felon to escape or to avoid arrest, trial, conviction or punishment after the commission of the felony. . . .

"In order to commit the crime of accessory after the fact . . . there must be some indication that the effort to assist a fleeing felon actually aided or assisted him in some way." *White v. State*, 851 So. 2d 400, 405 (Miss. App. 2003).

Here, there is no indication that the School Resource Officer had ever fled, let alone that Turner had assisted him. To the contrary, Turner had taken the Fifth Amendment to protect himself when the district attorney had accused him of being a "possible defendant."

Oliver's causing Turner to be fired in retaliation for his taking the Fifth Amendment violated Turner's constitutional right to silence.

Oliver claims qualified immunity. Qualified immunity never arises in this case because Oliver's actions in talking to the school district are not a part of the discretionary duties of a district attorney. Qualified immunity protects those "officials who are required to exercise their <u>discretion</u>. . . ." *Harlow v. Fitzgerald*, 457 U.S. 800, 807 (1982) (emphasis added). Oliver's conversations with the trustees and superintendent, falsely claiming that there was a valid indictment, were false, since there was no probable cause that Turner was an accessory after the fact. A

9

district attorney has no duties with respect to making reports to members of a school board and, therefore, could not have any discretionary duty to speak to such persons in order to interfere in one's employment. The duties of a district attorney are set forth in MISS. CODE ANN. § 25-31-11(1), and are

> to represent the state in all matters coming before the grand juries of the counties within his district and to appear in the circuit courts and prosecute for the state in his district all criminal prosecutions and all civil cases in which the state or any county within his district may be interested. . . .

The district attorney has no duty and, therefore, no discretion to be exercised, when she communicates with the trustees of a local school board. The qualified immunity doctrine is a judicially-created doctrine which, contrary to the accepted textual method of statutory interpretation, adds immunity to the statute. *See*, *e.g.*, Brief of the Cato Institute as Amicus Curiae Supporting Petitioner in *Hammer v. Burls*, 2020 WL 3317124 (2020) (noting that "qualified immunity is untethered from any statutory or historical justification").

Judge Willett has noted that the Civil Rights Act of 1971, as adopted, states that

> any person within the jurisdiction of the United States to the deprivation of any rights, privileges, or immunities secured by the Constitution of the United States, shall, *any such law, statute, ordinance, regulation, custom, or usage of the State to the contrary notwithstanding*, be liable

10

to the party injured in any action at law, suit in equity, or other proper proceeding for redress....

*Rogers v. Jarrett*, 63 F.4th 971, 979 (5th Cir. 2023) (emphasis in original).

Judge Willett points out that the codifiers of the Civil Rights Act of 1961 failed to copy this italicized phrase into 42 U.S.C. § 1983. *See Rogers*, 63 F.4th at 979-80 (Willett, J., concurring). The italicized phrase likely indicates no immunity under 42 U.S.C. § 1983 was intended.

There is no sound reason to expand the misinterpretation of the Civil Rights Act of 1871, so as to immunize one who is not performing any discretionary duty of his or her office, but is acting wholly outside of his or her statutory duties.

Even if qualified immunity applies, it protects officers only if "their actions could reasonably have been thought consistent with the rights they are alleged to have violated." *Anderson v. Creighton*, 483 U.S. 635, 638 (1987). All district attorneys and almost all citizens know about the self-incrimination prohibitions of the Fifth Amendment. Certainly, a district attorney knows that a person cannot be penalized because he or she exercises the right to silence under the Fifth Amendment of the United States Constitution. There is no qualified immunity when "a reasonable police officer would have known that his conduct was illegal." *Duckett v. City of Cedar Park, Tex.*, 950 F.2d 272, 280 (5th Cir. 1992).

11

Even with qualified immunity, defendants are liable "if their actions violated 'clearly established' constitutional rights." *Fairchild v. Coryell Cnty., Texas*, 40 F.4th 359, 367 (5th Cir. 2022). Qualified immunity is lost if the "[p]recedent applying the rule . . . be specific enough that it is 'clear to a reasonable [defendant] that his conduct was unlawful in the situation he confronted.'" *Fairchild*, 40 F.4th at 367.

Under this Court's precedents, invoking the Fifth Amendment in the context of a legal proceeding is protected activity. Turner's invocation of the Fifth Amendment was made in the context of a hearing to determine whether there was probable cause for the arrest of a School Resource Officer. This hearing is required by Miss. Code Ann. § 99-3-28.

In the context of this legal proceeding, Turner invoked the Fifth Amendment. Turner's doing so is protected by clearly-established law from this Circuit. As this Court stated in *Doe v. State of La.*, 2 F.3d 1412, 1419, n. 14 (5th Cir. 1993):

> [A] witness may properly invoke the Fifth Amendment "privilege against compulsory self-incrimination ... 'in any proceeding, civil or criminal, administrative or judicial, investigatory or adjudicatory' when he [or she] 'reasonably apprehends a risk of self-incrimination, ... though no criminal charges are pending against him [or her], ... and even if the risk of prosecution is remote.'" *In Re Corrugated Container Anti–Trust Litigation*, 620 F.2d 1086, 1091 (5th Cir. 1980) (quoting *Wehling v. Columbia Broadcasting System*, 608 F.2d 1084, 1087 n. 5 (5th Cir. 1979) and *Kastigar v. United States*, 406 U.S. 441, 444, 92 S.Ct. 1653,

12

1656, 32 L.Ed.2d 212 (1972)), cert. denied, 449 U.S. 1102, 101 S.Ct. 897, 66 L.Ed.2d 827 (1981).

*Doe* was quoted by this Circuit, with approval, in *Izen v. Catalina*, 256 F.3d 324, 329 (5th Cir. 2001).  Accordingly, the right to assert the Fifth Amendment in a judicial proceeding, such as a probable cause hearing under MISS. CODE ANN. § 99-3-28, is clearly settled law in this Circuit.

In summary, while Oliver has absolute immunity for her actions as a prosecutor in obtaining a baseless grand jury indictment for retaliatory reasons, there is no immunity for retaliating against Turner by causing him to be terminated from his employment, because he exercised his Fifth Amendment right to silence at an official court proceeding.

Any competent district attorney would know that invoking the Fifth Amendment does not constitute being an accessory after the fact, and would know there must be probable cause for an indictment.  Therefore, the district attorney's telling members of the school that Turner was an accessory after the fact was a false statement.  When Oliver caused Turner to be fired by his employer, by claiming that there was a valid indictment against him, Oliver retaliated because of exercise of constitutional rights.   No type of immunity protects Oliver.   Even if qualified

13

immunity may be invoked, it does not apply here since the right to invoke the Fifth Amendment in court proceedings is clearly settled.

## II. TURNER'S SECOND AMENDED COMPLAINT MAKES A PLAUSIBLE CLAIM THAT APPELLEE MALICIOUSLY INTERFERED WITH TURNER'S EMPLOYMENT CONTRACT, IN VIOLATION OF STATE LAW.

*Courtney v. Glenn*, 782 So.2d 162, 164-65 (Miss. App. 2000), citing *Cenac v. Murry*, 609 So.2d 1257, 1268 (Miss. 1992), stated:

> Tortious interference with a contract is defined as a malicious or intentional interference with a valid and enforceable contract by a third party which causes one contracting party not to be able to perform and the failure to perform results in a monetary loss for the other contracting party.

Restatement 2d of Torts § 767 (1979) states:

> [While] there is room for different views, the determination to whether the interference was improper or not is ordinarily left to the jury, to obtain its common feel to the state of community mores, and for the manner in which they would operate upon the facts in question.

The tort is established when "defendant knows of the existence of a contract and does a wrongful act without legal or social justification that he is certain or substantially certain will result in interference with the contract." *AmSouth Bank v. Gupta*, 838 So. 2d 205, 214 (Miss. 2002). "Whether the defendant's acts were intentional or willful does not require an outright confession to that effect, but rather

may be inferred. *Id.* at 48 (citing *Liston v. Home Ins. Co.*, 659 F.Supp. 276, 281 (S.D. Miss. 1986))." *Gupta*, 838 So. 2d at 214.

"The Mississippi Supreme Court has held that tortious interference with at-will contracts of employment is a viable claim." *Watkins v. Oakes*, 318 So. 3d 1125, 1129 (Miss. App. 2020), reh'g denied (Jan. 19, 2021), cert. denied, 318 So. 3d 483 (Miss. 2021). *Watkins* cites a number of other cases, listing the elements of the tort of malicious interference with employment as:

> (1) intentional and willful acts, (2) calculated to cause damage to the plaintiff in his lawful business, (3) done with the unlawful purpose of causing damage and loss, without right or justifiable cause on the part of the defendant (which constitutes malice), and (4) resulting in actual damage or loss.

*Watkins*, 318 So. 3d at 1129.

Many cases have upheld claims of malicious interference with employment on facts less egregious than those in this case.[1] The fact that Oliver is a State official

---

[1]  *Papagolos v. Lafayette County School Dist.*, 972 F.Supp.2d 912, 933 (N.D. Miss. 2013) (summary judgment denied for school athletic director and trustee alleged to have maliciously caused school softball coach to lose position and manifested malice against her by trying to prevent her from going to school board); *Gibson v. Estes*, 2008 WL 3884393, *3 (N.D. Miss. 2008), affirmed, 338 Fed.Appx. 476 (5th Cir. 2009) (holding mayor could be held individually liable to an at will police chief when the mayor caused the board to fire the police chief because the chief "repeatedly became involved in investigations of [the mayor]."); *Lofton v. City of West Point, Miss.*, 2012 WL 1135862, *13 (N.D. Miss. 2012) (holding a city alderman could be held liable to a discharged city employee for malicious interference with the employee's position at the electric department); *Wertz v. Ingalls Shipbuilding, Inc.*, 790 So.2d 841 (Miss. App. 2000) (holding a claim for intentional interference was stated when the defendant would not allow plaintiff to work for a contractor on its property, so as to continue his employment); *Grice v. FedEx Ground Package System, Inc.*, 925 So.2d 907, 911 (Miss. App. 2006) (holding summary judgment would be reversed where an individual supervisor

does not prohibit her being held personally liable for malicious interference with employment. This is demonstrated by *Springer v. Ausbern Constr. Co.*, 231 So. 3d 980, 989 (Miss. 2017), which held that a government official (the county engineer) may be sued for malicious interference with employment, and such a claim is outside the Mississippi Tort Claims Act. *Springer* held:

> Tortious interference with a contract requires proof of malice as an essential element. *Par Indus., Inc. v. Target Container Co.*, 708 So.2d 44, 48 (¶ 8) (Miss. 1998). As a result, Ausbern's claim for tortious interference with the road-construction contract against Springer in his individual capacity was not subject to the Tort Claims Act's presuit notice requirements.

*Springer*, 231 So. 3d at 989.

*Springer* interpreted MISS. CODE ANN. § 11-46-5(2), which provides that:

"[A]n employee shall not be considered as acting within the course and scope of his

---

thought the plaintiff had tuberculosis, called her home, and told her that it would not be in her "best interest" to return to work, causing her to lose her employment); *Dearman v. Stone County School Dist.*, 2014 WL 1153068, *8-9 (S.D. Miss. 2014) (finding sufficient evidence that school superintendent and school board trustee had caused firing of special education teacher in bad faith); *Stephen v. Winston County, Miss.*, 2008 WL 4813829, *8-9 (N.D. Miss. 2008) (finding there were issues of material fact as to whether defendant prison warden fired nurse under his supervision in bad faith); *Crabb v. Itawamba County, Miss.*, 2005 WL 2648017, *5 (N.D. Miss. 2005) (holding county supervisor could be held liable for the firing of road hand for political reasons); *Vaughan v. Carlock Nissan of Tupelo, Inc.,* 553 Fed.Appx. 438, 444 (5th Cir. 2014) (holding that summary judgment was improperly granted on an intentional interference claim since the plaintiff had produced evidence from which a jury could find that an individual defendant terminated Vaughan '*without right or good cause.*'" (emphasis in original)). *Dixon v. Alcorn Cnty., Mississippi*, 2022 WL 610268, *22 (N.D. Miss. 2022) (justice court judge who caused board of supervisors to discharge the plaintiff for reporting him to the Mississippi Commission on Judicial Performance could be held liable for interference with employment).

employment and a governmental entity shall not be liable or be considered to have waived immunity for any conduct of its employee if the employee's conduct constituted . . . malice. . . ."

*Springer* was explained in *Jones v. Mississippi Institutions of Higher Learning*, 264 So. 3d 9, 33, ¶¶ 75-76 (Miss. App. 2018), which was a suit brought against the athletic director of Alcorn State University alleging malicious interference with contract. *Jones* stated:

> *Springer* clearly holds that the MTCA does not apply to a claim for tortious interference with contract. [*Springer*, 231 So. 3d at 988-89] Therefore, Jones properly filed this claim against Hamilton *in Hamilton's individual capacity. Id.* The MTCA and its various requirements, defenses, and exemptions do not apply to a claim properly filed against an individual employee in his individual capacity. *See Univ. of Miss. Med. Ctr. v. Oliver*, 235 So.3d 75, 82-83 (¶¶ 26-33) (Miss. 2017).
> Based on the Supreme Court's recent decision in *Springer*, the circuit court erred by dismissing Jones's tortious interference claim against Hamilton. That claim simply is not subject to the MTCA.[2]

---

[2] Even before *Springer* and *Jones* were decided, many cases have upheld suits against individual governmental defendants for malicious interference, notwithstanding the Mississippi Tort Claims Act. These cases include: *Gibson v. Estes*, 2008 WL 3884393, *3 (N.D. Miss. 2008), aff'd, 338 F. App'x 476 (5th Cir. 2009), where the defendant mayor recommended the police chief's firing after the police chief had "repeatedly became involved in investigations of [the mayor], his family, and his business." The Fifth Circuit affirmed this finding because the proof was sufficient to show the defendant's acts were malicious, meaning they were "without right or justifiable cause. . . ." *Gibson*, 338 F. App'x at 477.

*Lofton v. City of W. Point, Miss.*, 2012 WL 1135862, at *12 (N.D. Miss. 2012), held that a city alderman could be held individually liable when he caused a city employee to be fired because the city employee had cut off the alderman's electricity for nonpayment of electric bills; *Stephen v. Winston Cty., Miss.*, 2008 WL 4813829, *8-9 (N.D. Miss. 2008), held that a director of state correctional facility could be held personally liable to nurse for malicious interference if director

17

In *Russell v. City of Tupelo, Mississippi*, 2021 WL 4979005 (N.D. Miss. 2021), the Northern District of Mississippi recently sustained a motion for reconsideration in a case against an assistant police chief, who was sued for malicious interference with employment.    In *Russell*, the Court held that it had erroneously dismissed the claim because of:

> more recent cases wherein Mississippi courts have held that state law claims against individuals for tortious interference with contractual relations fall outside the scope of the Mississippi Tort Claims Act.  *See, e.g., Jones v. Miss. Institutions of Higher Learning*, 264 So.3d 9, 33 (Miss. Ct. App. 2018) (noting that a tortious interference claim "is not subject to the MTCA.") (citing *Springer v. Ausbern Constr. Co.*, 231 So.3d 980, 989 (Miss. 2017)) (additional citations omitted). . .

*Russell*, 2021 WL 4979005, at *1.

In *Russell*, District Judge Sharion Aycock went on to find that there was ample evidence to survive summary judgment on a malicious interference claim based upon

---

caused nurse's discharge because she reported illegal activity; *Papagolos v. Lafayette Cty. Sch. Dist.*, 972 F. Supp. 2d 912, 933 (N.D. Miss. 2013), amended on reconsideration (Nov. 2013), held that summary judgment would be denied to school athletic director and school board trustee, who were charged to have caused softball coach to lose his position in order to prevent her from meeting with school board; *Dearman v. Stone Cty. Sch. Dist.*, 2014 WL 1153068, *8-9 (S.D. Miss. 2014), held there was sufficient evidence to deny summary judgment on a claim against school superintendent and school board trustee because they had caused the firing of a teacher in bad faith; *Crabb v. Itawamba Cty., Mississippi*, 2005 WL 2648017, *4 (N.D. Miss. 2005), held that a county supervisor could be held individually liable for malicious interference when he caused an employee to be fired because of his political activities.

Under all of the above authorities, in order to prove malice, it is necessary to show only that the individual defendant acted intentionally and "*without right or good cause. . . .*"  *See*, e.g., *Vaughan v. Carlock Nissan of Tupelo, Inc.*, 553 F. App'x 438, 445 (5th Cir. 2014) (emphasis in original).

the personal animosity which the assistant chief held against a subordinate. The *Russell* opinion cited the cases previously cited in this brief, as establishing that Mississippi law recognizes the tort of malicious interference with employment when one causes another to be discharged from his employment for reasons of personal animosity. *Russell*, 2021 WL 4979005, at *2.

Just recently, this Court has recognized that malicious interference in another's employment is a tort under Mississippi law. In *Hicks v. Martinrea Auto. Structures (USA), Inc.*, 12 F.4th 511, 515-16 (5th Cir. 2021), this Court held that in order for a plaintiff to state a claim of malicious interference, he or she must show that the defendant "acted in bad faith and outside the scope of her responsibility in her role as HR Manager." *Hicks*, 12 F.4th at 515.

Just as *Hicks* held that firing an employee to prevent her from testifying as a witness at a Workers' Compensation hearing could be found by a jury to be "in bad faith and outside the scope of her responsibility," Oliver's causing Turner to be fired because he had invoked the Fifth Amendment could be found by a jury to mean that Oliver "acted in bad faith and outside the scope of her responsibility" as a district attorney.

## <u>CONCLUSION</u>

Philip Gerard Turner's claim of a violation of his Fifth Amendment rights by causing him to be discharged from his employment because he exercised his right to silence states a plausible cause of action for violation of Fifth Amendment rights.

Turner's state law claim for malicious interference with employment states a plausible cause of action for violation of state law.

This Court should reverse the grant of the 12(b)(6) motion to dismiss.

RESPECTFULLY SUBMITTED, this the 12th day of June, 2023.

<div style="margin-left:40%">

PHILIP GERARD TURNER,
Plaintiff-Appellant


By:    <u>*/s/ Jim Waide*</u>
JIM WAIDE, MS Bar No. 6857
waide@waidelaw.com
WAIDE & ASSOCIATES, P.A.
332 North Spring Street
Tupelo, MS 38804-3955
Post Office Box 1357
Tupelo, MS 38802-1357
(662) 842-7324 / Telephone
(662) 842-8056 / Facsimile

ATTORNEY FOR PLAINTIFF-APPELLANT

</div>

## **CERTIFICATE OF SERVICE**

This will certify that undersigned counsel for Plaintiff-Appellant has this day filed the above and foregoing **Brief of Appellant** with the Clerk of the Court, utilizing this Court's electronic case data filing system (CM/ECF), which sent notification of such filing to the following:

Alan M. Purdie, Esq.
PURDIE & METZ, PLLC
P. O. Box 2659
800 Woodlands Parkway, Suite 200 (39157)
Ridgeland, MS 39158
Email: apurdie@purdieandmetz.co

SO CERTIFIED, this the 12th day of June, 2023.

*/s/ Jim Waide*
JIM WAIDE
Attorney for Plaintiff-Appellant

**CERTIFICATE OF COMPLIANCE WITH TYPE-VOLUME
LIMITATION, TYPEFACE REQUIREMENTS, AND
TYPE STYLE REQUIREMENTS**

1.      This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because it contains 4,905 words, excluding the parts exempted by FED. R. APP. P. 32(f).

2.      This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because it has been prepared in a proportionally-spaced typeface using Corel WordPerfect Office X6, in 14-point Times New Roman font (except for footnotes, which are in 12-point Times New Roman font, as permitted by FIFTH CIRCUIT RULE 32.1).

3.      The undersigned understands a material misrepresentation in completing this certificate or circumvention of the type-volume limits in FED. R. APP. P. 32(a)(7), the typeface requirements of FED. R. APP. P. 32(a)(5), or the type style requirements of FED. R. APP. P. 32(a)(6) may result in the Court's striking the brief and imposing sanctions against the person signing the brief.

SO CERTIFIED, this the 12th day of June, 2023.

*/s/ Jim Waide*
_____
JIM WAIDE
Attorney for Plaintiff-Appellant